JAMES K. EAGLE AND GEO. R. LETOURNEAU

v.

MOSES ROHRHEIMER.

*Chattel Mortgages—Sale to Mortgagee—Validity of—Change of possession—Loan—Replevin—Evidence—Vendor can not Impeach Title of Vendee.*

1. After a valid sale and delivery of chattel property, or after a *bona fide* delivery of mortgaged chattels to the mortgagee in satisfaction of the debt and possession taken by the mortgagee, the vendee or mortgagee may temporarily loan such chattels to the vendor or mortgagor, or employ the latter to use them in his service without invalidating his title. But in order to make such transfer of property valid as against third parties there must be a substantial change of possession of such character or duration as would reasonably notify other persons that the property was transferred and the ownership changed.

2. In an action of replevin to recover certain personalty as the property of the mortgagor thereof, it is *held*: That, under the evidence, there was no apparent change of possession of a horse, for which the mortgagor had given a bill of sale to the mortgagee; and that evidence of statements made by the former as to the date of the bill of sale was properly excluded, as the vendor can not be heard after sale to impeach the title of the vendee.

Eagle v. Rohrheimer.

[Opinion filed December 11, 1886.]

APPEAL from the Circuit Court of Kankakee County; the Hon. ALFRED SAMPLE, Judge, presiding.

In connection with this case see the preceding case of Mc-Mahill v. Humes.

Mr. H. K. WHEELER, for appellants.

Messrs. LAKE & POTTER, for appellee.

BAKER, P. J. This was a replevin instituted by Rohrheimer against James K. Eagle and George R. Letourneau for the recovery of certain personal property that had been levied on by Letourneau, Sheriff of Kankakee County, by virtue of an execution issued on a judgment in the Circuit Court of said county for $1,510 and costs, in favor of Eagle, and against James H. Craddock. Pleas were filed that justified the taking under said execution, and claimed that the property belonged at the time of the levy to Craddock. The result of a jury trial was a verdict and judgment in favor of Rohrheimer for all of the property in dispute.

A horse, buggy, cutter and set of single harness, constituting a part of the articles that were in controversy, had belonged to Craddock, and he had given to Rohrheimer a chattel mortgage upon them to secure a debt that matured January 28, 1884.

An absolute bill of sale, bearing the date mentioned, was executed by the mortgagor to the mortgagee for the property covered by the mortgage in satisfaction of the debt. The execution was levied on the 14th day of February, 1884.

We are of opinion the evidence does not sufficiently sustain the verdict of the jury upon the question of the ownership of the horse. After a valid sale and delivery of chattel property, or after a *bona fide* delivery of mortgaged chattels to the mortgagee in satisfaction of the debt and possession taken by the mortgagee, the vendee or mortgagee may temporarily loan such chattels to the vendor or mortgagor, or employ the

latter to use them in the service of the vendee or mortgagee, without invalidating the title. But, in order to make such transfer of property valid as against third parties, there must be a substantial change of possession, a change of such character or duration as would reasonably notify other persons the property was transferred and ownership changed.

In this case, after the date of the bill of sale and up to the time of the levy, the horse was left in the possession and control of Craddock, the original owner, the same as theretofore. He, and the members of his family and his employes, continued to use it both in their business and for pleasure; and it was fed, watered and attended to by his family and servants. Only five days before the levy he had the four shoes of the horse set, and paid for the work; and at the very time it was levied upon, it was being fed and watered by his brother. It is true the horse was kept in the barn of Rohrheimer, but then the barn was rented by Craddock, and the horse had been kept there both before and after the date of the bill of sale. Appellee testified that he hired John Coyn to take care of the horse, but according to the testimony of Coyn, Craddock kept the horse there, and continued to use him as long as he was there, and Craddock's stepson took care of him. It does not appear that appellee ever used the horse, or ever paid anything for its keeping. The decided weight of the evidence is that there was no apparent change of possession, and that third parties could not possibly have been apprised from the surrounding circumstances that there had been a change of ownership. This was not a case of a mere temporary borrowing by the vendor, but a case of continued possession and use by him.

The ruling of the court in excluding from the jury, evidence of the statements made by Craddock as to the date when the bill of sale was in fact executed, was right; even though it was proposed to show in connection therewith that such statements were made while he was in possession of the property. The law forbids that a vendor should after sale be heard to impeach the title of the vendee. The case of Amick v. Young et al., 69 Ill. 542, we do not regard as an authority in point. The

declarations there considered were not those of a vendor against the interest of his vendee; and besides, the declarations were those of a person who, at the time they were made, was in actual possession of the property, exercising full control over it, offering to sell it, and claiming it as his own, and what he said under such circumstances was held to be a part of the *res gestæ*, and therefore legitimate evidence.

In the present litigation the statements excluded were those of a person not claiming at the time they were made a present interest in the property under discussion, and were a mere narration of past transactions, and such narration was wholly unconnected with and formed no part of the transactions themselves, and consequently were not a part of the *res gestæ*.

The court very properly modified the 6th instruction for appellants, by eliminating the particular circumstances that was incorporated in it. Appellants claim that it was a strong circumstance; and that the attention of the jury should have been called to it as one of the badges of fraud. We may remark that it was not a conclusive circumstance, and that it was no part of the duty of the trial court to make an argument to the jury in behalf of either party to the suit and call the special attention of the jurors to particular but inconclusive facts in proof. Such mode of instruction is likely to mislead the jury, by giving undue importance to the circumstances that may be thus singled out from the bulk of the testimony.

The verdict of the jury improperly awarded the horse to appellee. The motion for a new trial should have prevailed, and it was manifest error to overrule it; for that error the judgment is reversed and the cause remanded.

*Reversed and remanded.*